IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOEL CHRISTIAN HARDMAN | § | |
| VS. | § | CIVIL ACTION NO. 1:21-cv-360 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Joel Christian Hardman, proceeding *pro se*, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

In 2019, pursuant to pleas of guilty entered in the 401st District Court of Collin County, Texas, Petitioner was convicted of aggravated sexual abuse of a child and sexual performance of a child. Pursuant to a plea agreement, Petitioner was sentenced to 10 years of imprisonment for each conviction, with the sentences to run concurrently. Petitioner did not appeal his sentences or convictions.

Petitioner subsequently filed a state application for writ of habeas corpus. The Texas Court of Criminal Appeals denied the application on the findings of the trial court without a hearing and on the court's independent review of the record. *Ex parte Hardman*, Appl. No. 92,495-01.

Grounds for Review

Petitioner asserts the following grounds for review: (1) his pleas of guilty were involuntary; (2) he received ineffective assistance of counsel because: (a) counsel did not provide him with certain information; (b) counsel failed to object to changes to plea agreement; and (c) counsel provided him with incorrect information concerning bond revocation; (3) the prosecution acted

improperly by telling counsel his bond would be revoked if he did not plead guilty; (4) the court failed to present options and remedies for addressing coercion and issues with counsel; and (5) the prosecution erred by adding a charge to the plea agreement and changing the terms of the plea agreement.

## Standard of Review

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

<u>Analysis</u>

*Involuntary Guilty Pleas*

As described above, Petitioner states his guilty pleas were involuntary. He states he was subject to extreme pressures and stress due to diagnosed sleep and schizoaffective disorders. He also states he was not permitted to see certain case records and Child Protective Services ("CPS") files before entering his pleas.

    A. <u>Legal Standard</u>

A federal court will uphold a guilty plea in a habeas corpus proceeding if the plea was knowing, voluntary and intelligent. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). For a plea to be intelligently and knowingly entered, the defendant must understand both the true nature of the charge against him and the consequences of the plea. *United States v. Briggs*, 939 F.2d 222, 227 (5th Cir. 1991).

The critical issue in determining whether a plea was voluntary and intelligent is "whether the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their technical legal effect." *James*, 56 F.3d at 666. "As long as the defendant understands the length of time he might possibly receive, he is fully aware of the consequences of his plea." *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993). When "a defendant understands the nature of the charges against him and the consequences of his plea, yet

3

voluntarily chooses to plead guilty, that plea should be upheld on federal review." *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

Declarations of voluntariness, made upon oath in open court, carry a strong presumption of truth, forming a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). In addition, official records from state court proceedings are entitled to a presumption of regularity and are accorded "great evidentiary weight." *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974).

  B. <u>Evidence Regarding Guilty Pleas</u>

Prior to entering his guilty pleas, Petitioner signed two Plea Agreements. The first Plea Agreement dealt with the charge of aggravated sexual assault of a child (doc. no. #23-1 at 16-19). The document informed Petitioner that he was charged with a first degree felony and that while the parties had agreed to a sentence of 10 years of imprisonment, a conviction could result in a sentence of up to 99 years of imprisonment. Petitioner acknowledged his attorney had explained the plea agreement to him and that he understood his rights and the consequences of his plea. He further acknowledged that he had knowingly, freely and voluntarily waived his rights and pled guilty to the offense described in the plea agreement. The second plea agreement, dealing with the charge of sexual performance of a child (doc. #23-1 at 22-25) contained similar provisions except that it informed Petitioner he was charged with a second degree felony which could result in a sentence of up to 20 years of imprisonment.

In addition, at the guilty plea hearing held on February 5, 2019, the court told Petitioner he had agreed to plead guilty to aggravated sexual assault of a child, a first degree felony, and sexual performance of a child, a second degree felony (doc. #23-22 at 10). Petitioner acknowledged he had signed the two plea agreements (doc. #23-22 at 12). He also acknowledged he was pleading guilty because he was guilty and for no other reason and that no one had forced him to plead guilty (doc. #23-22 at 22-23).

### C. Mental Competency

As stated above, Petitioner asserts he was not competent to enter his pleas. During the guilty plea hearing, the court asked Petitioner whether he had ever been in a mental hospital. Petitioner stated he had been hospitalized after taking an overdose of Ativan (doc. #23-22 at 14). The court also asked Petitioner whether he was currently suffering from any mental illness. Petitioner stated he was suspected of having schizoaffective disorder, but that it was likely he was suffering from a sleep disorder. He stated he did not suffer from any symptoms which would fall under schizoaffective disorder and he was not taking any medications (doc. #23-22 at 15).

With respect to Petitioner's assertion that his pleas were involuntary because he was subject to extreme pressures and stress due to diagnosed sleep and schizoaffective disorders, the state habeas trial court made the following Findings of Facts and Conclusions of Law:

> Applicant claims that "multiple pieces of evidence and witnesses" can show that he was under stress, lacked sleep, and had financial and family pressures to resolve this case. Applicant was afraid that if he mentioned the evidence along with his complaints about trial counsel and the prosecutor, the plea deal would have been blocked and that he would have received 30 years confinement without parole.
>
> Applicant relies on statements made by his parents in their affidavits that at the time of the plea, Applicant was stressed and sleeping poorly.
>
> Even if Applicant's parents' affidavit were credible, what they describe are normal factors that all defendants would take into account in determining whether to accept a plea offer from the State.

(Doc. #23-9 at 71-72.).

The state habeas trial court found the stress and pressures described by Petitioner were similar to those experienced by all defendants considering a plea offer. This finding was not unreasonable in light of the evidence presented in state court. Further, Petitioner told the court he likely suffered from a sleep disorder rather than a shcizoaffective disorder. He also stated he was not experiencing any symptoms that would indicate he was suffering from a schizoaffective disorder. In light of the findings described above, and Petitioner's statements at the plea hearing, it cannot be concluded the trial court erred by finding Petitioner was mentally competent to enter his pleas.

D. Access to Documents

Petitioner also asserts his pleas were involuntary because he was not permitted to see certain case and CPS records. He states he did not see certain videos and an allegedly false police report. The Findings of Fact and Conclusions of Law of the state habeas trial court include the following:

> Applicant argues that he was denied access to portions of the CPS records. He has filed what he calls the "Impact Report" and claims that this is the portion of the CPS records withheld from him.
>
> [The prosecutor] has compared the document Applicant refers to as the "Impact Report" to the CPS records contained in the State's file.
>
> The information contained in Applicant's filings were included with the CPS records turned over to trial counsel and documented in the discovery log.
>
> Counsel has attested that she received the CPS records from the State and did not believe that anything was missing from the files.
>
> Applicant has failed to prove by a preponderance of the evidence that he did not have access to the CPS records prior to his plea.

(Doc. #23-9 at 74-75.).

The findings by the state habeas trial court on this point were not unreasonable in light of the evidence before it. The findings do not address documents other than the CPS records. However, Petitioner does not attempt to explain how he would have been able to mount a better defense if he had access to such records. As a result, Petitioner has failed to show he suffered prejudice as a result of not being able to see certain documents.

E. Conclusion

The plea agreements signed by Petitioner, and the transcript of the plea hearing, demonstrate Petitioner was aware of the charges against him and understood what punishment could be imposed if his pleas were accepted. Petitioner's guilty pleas were therefore knowing, voluntary and intelligent. As a result, the rejection by the state courts of this ground for review was not contrary to, or an unreasonable application of, clearly established federal law. Further, the rejection was not based on an unreasonable determination of the facts in light of the evidence before the state courts.

*Ineffective Assistance of Counsel*

A. <u>Substantive Standard</u>

In order to establish an ineffective assistance of counsel claim, a petitioner must prove counsel's performance was deficient, and that the deficient performance prejudiced petitioner's defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a petitioner must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In the context of a guilty plea, the prejudice prong of the *Strickland* test requires a petitioner to show there is a reasonable probability that but for counsel's errors, he would not have pled guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A mere allegation of prejudice is insufficient. Instead, a petitioner must establish that but for counsel's error, he would have insisted on going to trial rather than plead guilty. *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990).

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction.

*Richter*, 562 U.S. at 101. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if a petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*. at 102.

    B. <u>Application</u>

    1. <u>Failure to Inform Petititioner</u>

Petitioner asserts counsel was ineffective because she failed to provide him with certain information. Specifically, Petitioner states counsel failed to inform him: (1) he would continually have to admit his guilt in order to be released on parole; (2) he would be subject to restricted internet access; (3) that if he were released on parole he would be subject to electronic monitoring and his travel would be restricted; (4) it was possible to plead *nolo contendere*; and (5) he would be subject to restrictions concerning custody of his children.

With respect to this ground for review, the state habeas trial court made the following Findings of Fact and Conclusions of Law:

> . . . Applicant argues that trial counsel was ineffective because she did not advise him on a plea of "*nolo contendere*" and that if she had, he would have entered that plea because he is innocent. Applicant appears to argue that because he pleaded guilty and not *nolo contendere*, he must now continuously admit his guilt in order to obtain and be successful on parole. Counsel states that she did not advise Applicant on the plea of *nolo contendere* and that she did not advise Applicant that in order to receive parole he would be required to admit his guilt. Nevertheless, Applicant has not shown by a preponderance of the evidence that had he pleaded *nolo contendere*, he would not have had to admit his guilt and that his parole would not be affected. Applicant has therefore failed to show by a preponderance of the evidence that the outcome of the proceeding would have been different had he been advised on a plea of *nolo contendere*.
>
> Applicant also argues that counsel told him that parole was easy but he has now discovered that while on parole his internet usage will be restricted, that there will be limitations on the custody of his children, that his ability to travel would be limited, and that he will have to wear an ankle monitor while on parole. Counsel advised Applicant that sex offender conditions would be imposed during any period of parole, but did not discuss the specific conditions. Counsel did advise that while on parole, Applicant's custody of his children would be limited and that his travel would be limited.
>
> Applicant relies on his father's statement in his affidavit that there were no discussions of travel restrictions that could limit Applicant's ability to visit him or

> Applicant's children. Again, Hardman's affidavit conflicts with the credible statements of trial counsel and is thus not credible.
>
> Counsel did not specifically advise Applicant that there would be limitations on his internet usage or that he would have to wear an ankle monitor while on parole. Nevertheless, in light of the fact that Applicant was facing a possible conviction for an offense that did not include the possibility of parole and a possible life sentence, he has not shown by a preponderance of the evidence that had he known that his internet usage would be limited or that he would have to wear an ankle monitor while on parole he would not have accepted the State's offer of ten years confinement.

(Doc. #23-9 at 23-26.).

The state habeas trial court found counsel informed Petitioner he would be subject to travel restrictions while on parole and that his custody of his children would be limited. Based on counsel's affidavit, this finding was not unreasonable based on the evidence before the court.

Counsel admitted she did not advise Petitioner there would be restrictions on his internet usage or that he would have to wear an ankle monitor while on parole. The habeas trial court concluded that in light of the lengthy sentence that could be imposed if Petitioner were convicted at trial, he failed to establish he would not have pled guilty if he had known he would have to wear an ankle monitor and be subject to internet restrictions. This conclusion was not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner also asserts counsel failed to inform him of the possibility of pleading *nolo contendere* or that he would have to continually admit his guilt in order to be released on parole.

As the state habeas court stated, Petitioner faced a possible life sentence if convicted at trial. In light of the sentence he could have received if he didn't accept the plea offer, there is not a reasonable probability Petitioner would have insisted on going to trial if he knew he would have to again admit his guilt in order to be released on parole. Petitioner has therefore failed to demonstrate prejudice as a result of not being informed he would have to admit his guilt again.

With respect to the possibility of Petitioner pleading *nolo contendere*, it is not clear how Petitioner would have benefitted from such a plea. He would have still been convicted of the same offenses and received the same sentences. As a result, Petitioner has not demonstrated counsel's failure to inform him he could plead *nolo contendere* resulted in prejudice.

2. <u>Failure to Object</u>

As described above, Petitioner pled guilty to two offenses. Petitioner states that when he appeared for his guilty plea hearing, a second charge had been added to the plea agreement and the other charge had been changed to an aggravated charge. He asserts counsel failed to inform him of the consequences of these changes or object to the additional charge.

In connection with Petitioner's state habeas application, counsel submitted an affidavit in which she stated that the prosecution did not add an additional charge to the plea agreement papers (doc. #23-4 at 32).

In its Findings of Facts and Conclusions of Law, the state habeas trial court found that the affidavit of counsel was credible and found that Petitioner's affidavit was not credible (doc. #23-9 at 51). The Findings of Fact and Conclusions of Law further stated:

> Initially the, State indicated that it would be willing to enter into a plea agreement of forty years' confinement. There were no more meaningful discussions after this initial offer because Applicant was adamant that he was not guilty.
>
> As the last trial date approached, the State offered ten years' confinement.
>
> The negotiated plea agreement states that the State was abandoning the continuous language of Count 1 and was proceeding only on the aggravated sexual assault [of] a child paragraph, and that the State was abandoning all other paragraphs of Count 1 as well as Counts 2, 3, 4, 5, and 7 of the indictment.
>
> Applicant argues that an additional charge was added to the plea paperwork that Applicant had not previously agreed to.
>
> Applicant agreed to plead guilty to two counts and . . . an additional charge was not added to the plea papers that he had not previously agreed to plead guilty to.

(Doc. #23-9 at 53-55.).

The state court found that an additional charge was not added to the plea papers. This finding was not an unreasonable determination of the facts in light of the evidence before the court.

In addition, as described above, Petitioner signed a plea agreement for each charge. Each plea agreement stated the offense Petitioner was pleading guilty to and the sentence he would receive if convicted. As a result, Petitioner was aware of the consequences of his pleas.

As a new charge was not added to the plea papers, and as Petitioner was aware of the charges he was pleading to and the consequences of his pleas, counsel's performance with respect to this ground for review did not fall below an objective standard of reasonableness or result in prejudice.

3. <u>Revocation of Bond</u>

Petitioner states counsel incorrectly informed him his bond would be revoked if he did not plead guilty.

In her affidavit, Petitioner's counsel stated she did not tell Petitioner that if he accepted the plea offer, but later changed his mind, his bond would be revoked (doc. #23-4 at 32). She also said the prosecution did not file a motion to revoke Petitioner's bond or threaten to have his bond revoked if he did not accept the plea offer (doc. #23-4 at 32-33).

In its Findings of Fact and Conclusions of Law, the state habeas trial court stated:

> Applicant argues that trial counsel was ineffective because she knew that the State had threatened to revoke his bond if he did not accept the plea offer and she had a duty to report this but instead aided the State in their threats. Counsel responds that the State did not threaten to have his bond revoked if he did not accept its plea offer.
>
> Applicant has filed an affidavit from his father, Michael Hardman, which claims that he overheard a discussion with Applicant and trial counsel in January 2019 where she told Applicant that backing out of the plea agreement would result in revocation of his bond and incarceration.
>
> Michael Hardman's affidavit is not credible.
>
> The State did not file a motion to revoke Applicant's bond and [counsel] did not tell Applicant that if he accepted the State's plea offer but later changed his mind that the State would seek to revoke his bond.
>
> The State did not threaten to have his bond revoked if he did not accept his plea offer and the State did not file a motion to revoke his bond.

(Doc. #23-9 at 56-57 and 71.).

The finding that the prosecution did not threaten to revoke Petitioner's bond and that counsel never told Petitioner about a threat was not unreasonable based on the evidence presented to the state court. This ground for review is therefore without merit.

11

*Improper Threat by Prosecution*

Petitioner states the prosecution improperly stated it would seek to have Petitioner's bond revoked if he refused to plead guilty. As set forth above, the state court found that the prosecution did not make the threat Petitioner describes. This finding was not unreasonable based on the record. Accordingly, this ground for review does not provide a basis for relief.

*Trial Court Error*

Petitioner contends the trial court acted improperly by failing to address his assertions regarding coercion and issues with counsel.

During the plea hearing, there was the following colloquy between the court and Petitioner:

THE COURT: Are you pleading guilty to both of these counts because you are guilty and for no other reason?

THE DEFENDANT: Yes.

THE COURT: Has anybody put any pressure on you, forced you or coerced you into entering your plea?

THE DEFENDANT: I kind of feel the whole plea deal is kind of coercion in general; but outside of that, no.

THE COURT: Okay. Explain that to me.

THE DEFENDANT: I think that they have impossible punishments against me, that when they are offering you a lighter sentence, it is hard not to take.

THE COURT: Do you think you were coerced? If you do, I am not taking your plea, you are going to trial on Monday. I cannot take your plea if you think some outside force has caused you to plead guilty and not the fact that you actually are guilty.

THE DEFENDANT: Nobody forced me.

THE COURT: Are you guilty? Did you do exactly the things they allege that you did in those counts?

THE DEFENDANT: Yeah.

THE COURT: Has anybody put any pressure on you–I already asked you that. Are you doing this freely and voluntarily?

THE DEFENDANT: Yes.

(Doc. #23-22 at 16-17.).

12

In addition, Petitioner acknowledged he had gone over the plea agreements with counsel and that she had explained the rights he was waiving. She had also explained to him that he did not have to plead guilty and the advantages and disadvantages of accepting the plea offer. Petitioner stated he was satisfied with the advice given him by counsel.

During the plea hearing, the court gave Petitioner an opportunity to state whether his pleas had been coerced. He stated he was pleading guilty freely and voluntarily. The court also asked whether Petitioner was satisfied with counsel's advice. Petitioner stated he was satisfied. Based on Petitioner's statements during the plea hearing, it cannot be concluded the court committed any error in determining whether Petitioner's plea was coerced or whether Petitioner had an issue with the advice offered by counsel. As a result, the rejection by the state courts of this ground for review was not contrary to, or an unreasonable application of, clearly established federal law.

*Changes to Plea Agreement*

Petitioner states he originally agreed to plead guilty to only one charge: sexual assault of a minor. He states the prosecution improperly added a charge of sexual performance of a child and raised the charge he agreed to plead guilty to so that it was an aggravated charge.

As stated above, the state court's finding that an additional charge was not added to the plea papers was not unreasonable based on the record. Moreover, the plea agreements made Petitioner aware of the offenses he was pleading guilty to and the consequences of his guilty pleas. Accordingly, Petitioner's allegations on this point fail to demonstrate he suffered any prejudice.

## Recommendation

This Petition for Writ of Habeas Corpus should be denied.

## Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th

Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

   **SIGNED this the 16th day of August, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE